**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| MARK RIDENOUR<br>22983 Regent Rd<br>Wickliffe, OH 44092 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES<br>AND INJUNCTIVE RELIEF** |
| AVI FOOD SYSTEMS, INC.<br>7722 Tyler Blvd.<br>Mentor, Ohio 44060 | )<br>)<br>)<br>) | **JURY DEMAND ENDORSED<br>HEREIN** |
| **Serve Also:**<br>AVI Food Systems, Inc<br>c/o John A. Payiavlas<br>2590 Elm Rd. NE<br>Warren, OH 44483 | )<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | ) | |

Plaintiff, Mark Ridenour, by and through undersigned counsel, as his Complaint against the Defendants, states and avers the following:

**PARTIES**

1. Ridenour is a resident of the City of Wickliffe, County of Lake, State of Ohio.

2. AVI Food Systems, Inc. ("AVI") is a corporation for profit registered to do business in the State of Ohio.

3. AVI operates a location at 7722 Tyler Blvd, Mentor, Ohio 44060.

4. AVI was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.02.

5. AVI was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C. §12101 *et seq*.

## JURISDICTION AND VENUE

6. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Ridenour is alleging a Federal Law Claim under the Americans with Disabilities Act of 1990 and Americans with Disabilities Amendments Act of 2008, 42 U.S.C. §12101 *et seq*.

7. This court has supplemental jurisdiction over Ridenour's state law claims pursuant to 28 U.S.C. § 1367 as Ridenour's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

8. All material events alleged in this Complaint occurred in Lake County.

9. Venue is proper pursuant to 28 U.S.C. §1391.

10. Within 300 days of the conduct alleged below, Ridenour filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2020-02769 against AVI.

11. On or about April 21, 2021, the EEOC issued and mailed a Notice of Right to Sue letter to Ridenour regarding the Charges of Discrimination brought by Ridenour against AVI.

12. Ridenour received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. §2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

13. Ridenour has filed this complaint within 90 days of the issuance of the Notice of Right to Sue letter.

14. Ridenour has properly exhausted his administrative remedies pursuant to 29 C.F.R. §1614.407(b).

## FACTS

15. On or about March 5, 2020, Ridenour applied for a job as a vending route driver at AVI.

16. As a result of suffering from knee problems, foot problems, and a hand tremor, Ridenour is and was considered disabled within the meaning of the ADA 42 U.S.C. 126 § 12101 et seq.

17. Ridenour walks with a limp.

18. In the alternative, AVI perceived Ridenour as being disabled.

19. In the alternative, the AVI perceived that Ridenour's medical condition constituted a physical impairment.

20. In the alternative, AVI perceived Ridenour's disability to substantially impair one or more of his major life activities, including walking.

21. Despite this actual or perceived disabling condition, Ridenour was able to perform the essential functions of the job of vending route driver.

22. AVI is a food service company.

23. Bill, last name unknown, ("Bill LNU")  was a supervisor at AVI.

24. As a supervisor at AVI, Bill LNU had the authority to hire employees on behalf of AVI.

25. Ridenour applied for the position of vending route driver.

26. The job duties of vending route driver include transporting food products to client locations.

27. The job duties of vending route driver include ensuring that a company vehicle is loaded with product needed to service locations.

28. On the job application for vending route driver, AVI listed that the ability to lift 50 pounds was preferred for the position.

29. On or about March 5, 2020, Ridenour had the ability to lift 50 pounds.

30. On the job application for vending route driver, AVI listed that the ability to pass the DOT physical was preferred for the position.

31. On or about March 5, 2020, Ridenour had the ability to pass the DOT physical.

32. On or about March 5, 2020, Bill LNU reached out to Ridenour for a phone interview.

33. At the end of Ridenour's phone interview with Bill LNU, Bill LNU instructed Ridenour to come to the AVI offices for an in-person interview.

34. On or about March 6, 2020, Ridenour visited AVI's offices for an in-person interview.

35. As soon as Ridenour walked into AVI's offices and identified himself, Bill LNU said "you can't do this job. I see the way you walk; you can't do this job." ("Incapable Comment")

36. In making the Incapable Comment, Bill LNU acknowledged that he perceived Ridenour to be disabled.

37. In making the Incapable Comment, Bill LNU indicated that he would not hire Ridenour because of his perceived disability.

38. In response to Bill LNU's Incapable Comment, Ridenour asked Bill LNU if his attitude was "because I'm older, or is it my hand tremor, or because I'm overweight?"

39. In response to Ridenour's inquiry for further explanation of the Incapable Comment, Bill made a second comment on Ridenour's limp, saying "I see the way you walk; you can't do it." ("Second Incapable Comment")

40. In making the Second Incapable comment, Bill LNU reiterated that he perceived Ridenour to be disabled.

41. In making the Second Incapable comment, Bill LNU again informed Ridenour that he would not hire Ridenour because of his perceived disability.

42. After Bill LNU made the Second Incapable Comment, Ridenour left AVI's offices.

43. After meeting Ridenour, Bill LNU refused to conduct an interview.

44. On or around March 6, 2020, Bill LNU informed Ridenour that AVI was not hiring him.

45. On or about March 6, 2020, Bill LNU alleged that the reason for not hiring Ridenour was his incapability to do the job of vending route driver.

46. On or about March 6, 2020, Ridenour met all qualifications required to do the job of vending route driver.

47. On or about March 6, 2020, Ridenour was able to perform the duties of a vending route driver, with or without accommodation.

48. AVI's stated reason for refusing to hire Ridenour was that Bill LNU perceived Ridenour to be incapable of performing the job duties of a vending route driver.

49. AVI did not request that Ridenour submit to a medical evaluation to determine whether Ridenour was able to perform the duties of a vending route driver.

50. AVI did not ask Ridenour if Ridenour could perform the duties of a vending route driver with an accommodation.

51. AVI did not engage in an interactive process to determine whether Ridenour could perform the duties of a vending route driver with a reasonable accommodation.

52. AVI did not proffer a legitimate, non-discriminatory reason for refusing to hire Ridenour.

53. Bill LNU intentionally declined to hire Ridenour.

54. Bill LNU willfully declined to hire Ridenour.

55. Upon information and belief, Ridenour would have been hired if AVI had held applicants to the standards set out in their job application for vending route driver.

56. On or around March 6, 2020, Bill LNI declined to hire Ridenour because of his perceived disability.

57. Upon information and belief, AVI hired a vending route driver that was not disabled and/or that they did not perceive to be disabled.

58. The above facts demonstrate that Defendants engaged in a pattern and practice of disability discrimination.

59. There was a causal connection between Ridenour's actual and/or perceived disability and Defendants' refusal to hire Ridenour.

60. As a direct and proximate result of Bill LNU's conduct, Ridenour suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AND AMENDMENTS ACT

61. Ridenour restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

62. Defendants are a qualified employer under the ADA.

63. Ridenour is a qualified employee under the ADA.

64. Ridenour suffers from foot problems, knee problems, and hand tremors.

65. Ridenour is disabled.

66. In the alternative, AVI perceived Ridenour as being disabled.

67. Ridenour's condition constituted a physical impairment.

68. Ridenour's condition substantially impaired one or more of his major life activities including working and walking.

69. In the alternative, AVI perceived Ridenour's condition to substantially impair one or more of his major life activities including working and walking.

70. Ridenour was qualified for the position of vending route driver.

71. Ridenour was fully competent to perform the essential job duties of vending route driver.

72. AVI treated Ridenour differently than other similarly-situated applicants based on his disabling condition.

73. AVI treated Ridenour differently than other similarly-situated applicants based on his perceived disabling condition.

74. On or about March 6, 2020, Defendant declined to hire Ridenour without just cause.

75. Defendants declined to hire Ridenour based his disability.

76. Defendants declined to hire Ridenour based his perceived disability.

77. Defendants violated 42 U.S.C. §12101 *et seq*. by discriminating against Ridenour based on his actual or perceived disability.

78. Defendants violated 42 U.S.C. §12101 *et seq*. by failing to hire Ridenour based on his actual or perceived disability.

79. Ridenour suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

80. As a direct and proximate result of Defendant's conduct, Ridenour suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## **COUNT II: DISABILITY DISCIMINATION IN VIOLATION OF R.C. §4112.01 *ET SEQ.***

81. Ridenour restates each and every paragraph of this Complaint, as if it were fully restated herein.

82. Defendants are a qualified employer under R.C. §4112.01 *et seq*.

83. Ridenour is a qualified employee under the R.C. § 4112.01 *et seq*.

84. Ridenour suffers from foot problems, knee problems, and hand tremors.

85. Ridenour is disabled.

86. In the alternative, AVI perceived Ridenour as being disabled.

87. Ridenour's condition constituted a physical impairment.

88. Ridenour's condition substantially impaired one or more of his major life activities including working and walking.

89. In the alternative, AVI perceived Ridenour's condition to substantially impair one or more of his major life activities including working and walking.

90. Ridenour was qualified for the position of vending route driver.

91. Ridenour was fully competent to perform the essential job duties of vending route driver.

92. AVI treated Ridenour differently than other similarly-situated applicants based on his disabling condition.

93. AVI treated Ridenour differently than other similarly-situated applicants based on his perceived disabling condition.

94. On or about March 6, 2020, Defendant declined to hire Ridenour without just cause.

95. Defendants declined to hire Ridenour based his disability.

96. In the alternative, Defendants declined to hire Ridenour based his perceived disability.

97. Defendants violated R.C. § 4112.01 *et seq*. by discriminating against Ridenour on based on his actual and/or perceived disability.

98. AVI denied Ridenour the job of vending route driver in 2020.

99. Defendants violated R.C. § 4112.01 et seq. by failing to hire Ridenour based on his actual and/or perceived disability.

100. As a direct and proximate cause of Defendants' conduct, Ridenour suffered and will continue to suffer damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Ridenour demands from Defendants the following:

(a) Issue an order requiring AVI Food Systems, Inc. to restore Ridenour to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Ridenour for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Ridenour's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/Angela Rodriguez*_____
Angela Rodriguez (0074432)
Brian D. Spitz (0068816)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:   (216) 291-5744
Email:  angela.rodriguez@spitzlawfirm.com
             brian.spitz@spitzlawfirm.com

*Attorney For Plaintiff Mark Ridenour*

## JURY DEMAND

Plaintiff Mark Ridenour demands a trial by jury by the maximum number of jurors permitted.

*/s/Angela Rodriguez*_____
Angela Rodriguez (0074432)
Brian D. Spitz (0068816)
**THE SPITZ LAW FIRM, LLC**